IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
                          )
DONNA M. KUNSA,           )
          Plaintiff,      )
                          )
          v.              )   Civil Action No. 03-1272
                          )
JO ANNE B. BARNHART,      )   Judge Lancaster
COMMISSIONER, SOCIAL SECURITY )   Magistrate Judge Hay
ADMINISTRATION,           )
                          )
          Defendant.      )
```

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [doc. no. 8] be denied.  It is further recommended that the Motion for Summary Judgment filed by the Defendant [doc. no. 10] be granted and that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits and supplemental security income be affirmed.

### II.  REPORT

**A.   Procedural History**

Plaintiff Donna M. Kunsa brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") under title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

In her application filed on September 18, 2000, Plaintiff alleges that she has been disabled since January 2000, due to stress (Tr. 154). The state agency denied her applications (Tr. 98-99, 116-19, 270-74). At Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a hearing on March 10, 2001, at which Plaintiff, who was represented by counsel, and a vocational expert testified (Tr. 70-97).

On December 27, 2001, the ALJ issued a decision denying Plaintiff's claim for benefits (Tr. 103-12). However, the Appeals Council granted Plaintiff's request for review and remanded the case back to another ALJ for further administrative proceedings (Tr. 125-28).

Accordingly, another ALJ conducted a hearing on August 13, 2002 (Tr. 31-69). On September 11, 2002, that ALJ issued a decision denying Plaintiff's claim for benefits (Tr. 15-24). The Appeals Council denied Plaintiff's request to review the September 11, 2002 decision, making it the final decision of the Commissioner for purposes of this judicial review (Tr. 4-6).

**B.   Factual Background**

Plaintiff was born on December 8, 1964, and was thirty-seven years old at the time of the ALJ's decision (Tr. 91). Plaintiff completed twelve grades of formal schooling with a special education curriculum and had periods of past work experience as a processing clerk, sales clerk/cashier, and bagger (Tr. 160, 163). Plaintiff indicated that despite her alleged

2

impairments, she took care of her personal needs, dusted, made the bed, washed dishes, did laundry, and vacuumed (Tr. 45, 171). In addition, she did her own shopping, prepared meals, handled her own bills, and visited with family and friends (Tr. 172).

At the August 30, 2001 hearing, Plaintiff indicated that she did not have any physical limitations, but stopped working in January 2000 because of her emotional condition (Tr. 79). She reported that she did not seek any treatment for her mental impairment until July 2000 (Tr. 80). She also reported that because her first appointment with a psychiatrist was not scheduled until October 2001, treatment until then had essentially consisted of medication prescribed by her primary care physician (Tr. 82).

Plaintiff testified that the antidepressant medication had kept her "more or less stabilized" (Tr. 82-83). She also indicated that she cleaned the house, watched television, visited her aunt and uncle, and went out with her husband a "couple of times a week" (Tr. 90).

At the August 13, 2002 hearing, Plaintiff testified that she quit her job because she thought people there wanted to kill her (Tr. 36). Plaintiff also testified that she did chores, such as vacuuming, dusting, and washing dishes (Tr. 45). Plaintiff further indicated that she did not leave the house alone, but went grocery shopping or clothes shopping with her father or her husband (Tr. 48).

3

C.   **Medical History**[1]

Because Plaintiff does not dispute the ALJ's findings regarding her physical limitations, we will summarize only the medical evidence regarding Plaintiff's mental condition.

Lanny DeTore, Ed.D., conducted a psychological evaluation of Plaintiff on November 28, 2000 (Tr. 193-96). Plaintiff informed Dr. DeTore that she cooked, cleaned, did the dishes, did laundry went shopping with her husband, and managed most of the money (Tr. 194).  Upon examination, Dr. DeTore reported that Plaintiff denied hallucinations, present or prior, and suicidal ideation, but claimed that she became depressed or upset when working (Tr. 195).  Dr. DeTore also noted that Plaintiff cleaned every day and kept everything very organized (Tr. 195).  Plaintiff displayed limited cognitive skills, but could count money if she could see it (Tr. 195).  Plaintiff was oriented in all three spheres; had an intact memory; had no problems with impulse control; had some difficulties with judgment; and had minimal insight (Tr. 195).  Dr. DeTore diagnosed a mixed personality disorder with prominent paranoid features, dependent features, and obsessive compulsive features (Tr. 196).  Despite this diagnosis, Dr. DeTore noted that Plaintiff functioned adequately with household chores (Tr. 196).

---

[1]   Because Plaintiff's medical history is not in dispute, much of the recitation here is excerpted from the comprehensive summary set forth in the Commissioner's brief.

He also opined that Plaintiff had a fair ability to perform all simple work-related functions, but had a poor ability to deal with stressors, interact with supervisors, and to understand, remember, and carry out complex or detailed instructions (Tr. 197-98).

On December 19, 2000, Roger Glover, Ph.D., reviewed the evidence of record and found that Plaintiff's ability to perform simple work-related functions was not significantly limited and she had no more than moderate limitations in performing all other work-related activities (Tr. 199-201). Dr. Glover specifically noted that Plaintiff had the psychological capacity "to carry out routine work assignments in a stable work setting" (Tr. 201).

On July 16, 2001, Plaintiff sought treatment at Family Services of Pennsylvania (Tr. 219). Plaintiff reported that she had no problems with her marriage relationship, her friendship/peer relationships, or with her activities of daily living (Tr. 219). She also reported that she was good at taking care of the housework and taking care of her husband and herself (Tr. 220). She enjoyed reading, walking, and using an exercise bike (Tr. 220). At her initial evaluation, Plaintiff's therapist, Erin Scutella, diagnosed major depression and borderline mental retardation and, although she found that Plaintiff had only moderate symptoms, Ms. Scutella nevertheless

assigned a current global assessment of functioning (GAF) of 35 and a past GAF of 50 (Tr. 223, 225).[2]

On October 12, 2001, Margaret Miller, M.D., evaluated Plaintiff and noted that she no longer worked, but did housework and slept and ate well (Tr. 233, 260).  She also noted that Plaintiff's depression was "mostly gone" since starting with Celexa (Tr. 260).  Upon examination, Dr. Miller found that Plaintiff had no psychomotor agitation or psychomotor retardation; had good interpersonal relational style with no fear of the interviewer; had normal speech rate and rhythm; and had logical and coherent thought processes (Tr. 261).  Although Plaintiff exhibited paranoid delusions and had below average intelligence, she had good memory and concentration, had good

---

[2]    A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning.  The GAF scale is divided into ten ranges of functioning.  A GAF rating is within a particular decile if either the symptoms severity or the level of functioning falls within the range.

A GAF score of between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV™") pp. 32-34 (American Psychiatric Association, Task Force on DSM-IV (4th ed. (Text Revised) 2000).  A GAF score of between 31 and 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).  Id.

emotional insight, and was able to interpret a proverb (Tr. 261).
Dr. Miller diagnosed schizoaffective disorder with nicotine
dependence (Tr. 233, 261).  She also opined that Plaintiff was
unable to work and had a GAF of 45 (Tr. 233, 261).

On October 31, 2001, Plaintiff reported that her
condition was improving since she began taking Risperdal (Tr.
237).  Plaintiff specifically noted that she was feeling more
functional (Tr. 237).  By December 3, 2001, Plaintiff was "doing
well" on medication with a bright affect and a fair mood (Tr.
237).

In January 2001, Dr. Miller noted that Plaintiff's
mother recently died (Tr. 241).  Nevertheless, Ms. Scutella
examined Plaintiff on February 11, 2002 and found that she had an
appropriate affect and a fair mood and denied suicidal ideation
and delusions (Tr. 236).  She also noted that Plaintiff was
helping her father after the death of her mother (Tr. 236).
Ms. Scutella further noted that Plaintiff's mood had been "on an
even keel" since she began taking Risperdal (Tr. 236).

On April 8, 2002, Ms. Scutella noted that Plaintiff had
an appropriate affect and fair mood (Tr. 235).  Ms. Scutella also
reported that although Plaintiff was still grieving the loss of
her mother, she was "doing well" on her medication (Tr. 235).

Dr. Miller re-examined Plaintiff on April 15, 2002 and
noted that she had no suicidal or homicidal ideation, no
hallucinations or delusions, and no depression (Tr. 240).  Dr.

Miller also noted that Plaintiff was sleeping well at night (Tr. 240).  Dr. Miller concluded that Plaintiff's GAF was 55 (Tr. 233).[3]

On May 6, 2002, Ms. Scutella noted that Plaintiff had a brighter affect, a good mood, and denied suicidal ideation (Tr. 235).  Ms. Scutella further reported that Plaintiff's depression was better and "she was doing well on the current medication" (Tr. 235).

In July 2002, Dr. Miller examined Plaintiff and noted that she was agitated, depressed, and paranoid due to her upcoming Social Security hearing (Tr. 258).  Dr. Miller increased Plaintiff's Risperdal and opined that Plaintiff had a GAF of 45 and was unable to work (Tr. 258).

### D.  Hearing Testimony and ALJ Decision

At the hearing, Timothy Mahler, a vocational expert ("VE"), testified that Plaintiff's past work as a cashier/counter clerk was semi-skilled work and her other jobs were unskilled work (Tr. 62).

The VE also testified that an individual of Plaintiff's age, education, and work history who could perform light or medium work, which was low-stress, simple, repetitive, and routine; required little interaction with the public or

---

[3]     A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (i.e., few friends, conflicts with peers or co-workers).  Id.

supervisors; and involved no excessive climbing, balancing, stooping, moving machinery, heights, and stair-climbing, could perform work that existed in significant numbers in the national economy (Tr. 64-65). Specifically, the vocational expert testified that such an individual would be able to perform work as a hand packer, janitor/cleaner, dishwasher, vehicle washer, laundry folder, office cleaner, and silverware wrapper (Tr. 65).

### E.   Standard of Review

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520.[4] In this case the ALJ

---

[4]   The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work,

decided the matter at the fifth step.  At the fifth step, the
Commissioner bears the burden of proving that, considering the
claimant's residual functional capacity,[5] age, education, and
past work experience, he can perform work that exists in
significant numbers in the regional or national economy.  42
U.S.C. § 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137,
146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir.
2000).

## F.   Discussion

Plaintiff's first argument is that the ALJ failed to
apply the proper standard of Social Security Ruling ("SSR") 85-28
in determining that Plaintiff's borderline intellectual
functioning is not a severe impairment.  A "severe" impairment is
defined as "any impairment or combination of impairments which
significantly limits your physical or mental ability to do basic
work activities."  20 C.F.R. § 404.1520(c).  "Basic work
activities" is further defined as "the abilities and aptitudes
necessary to do most jobs."  20 C.F.R. § 404.1521(b).
See Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) (the
claimant must show functional limitations that would preclude
substantial gainful activity, not just the mere diagnosis of

---

and (5) if not, whether he can perform any other work in the
national economy.  20 C.F.R. §§ 404.1520, 416.920.

[5]   A claimant's "residual functional capacity" is what he can
do despite the limitations caused by his impairments.
Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

impairment).  Stated differently, a "non-severe" mental
impairment is an impairment which does not significantly limit a
claimant's mental ability to do basic work activities like
understanding, carrying out, and remembering simple instructions;
using judgment; responding appropriately to supervision,
co-workers, and usual work situations; and dealing with changes
in a routine work setting.  20 C.F.R. §§ 404.1521; 416.921.

As discussed in SSR 85-28,

[a]n impairment or combination of impairments is
found "not severe" and a finding of "not disabled"
is made at [step two] when medical evidence
establishes only a slight abnormality or a
combination of slight abnormalities which would
have no more than a minimal effect on an
individual's ability to work even if the
individual's age, education, or work experience
were specifically considered (i.e., the person's
impairment(s) has no more than a minimal effect on
his or her physical or mental ability(ies) to
perform basic work activities) ... The severity
requirement cannot be satisfied when medical
evidence shows that the person has the ability to
perform basic work activities, as required in most
jobs.  Examples of these are walking, standing,
sitting, lifting, pushing, pulling, reaching,
carrying or handling; seeing, hearing, and
speaking; understanding, carrying out, and
remembering simple instructions; use of judgement,
responding appropriately to supervision,
coworkers, and usual work situations; and dealing
with changes in a routine work setting. Thus,
these basic work factors are inherent in making a
determination that an individual does not have a
severe medical impairment ... A claim may be
denied at step two only if the evidence shows that
the individual's impairments, when considered in
combination, are not medically severe, i.e., do
not have more than a minimal effect on the
person's physical or mental ability(ies) to
perform basic work activities. If such a finding
is not clearly established by medical evidence,

however, adjudication must continue through the
sequential evaluation process.

SSR 85-23.  Plaintiff argues that the ALJ improperly employed a
higher standard of severity in determining that Plaintiff's
borderline intellectual functioning was not a severe impairment.
Plaintiff references Dr. DeTore's determination that Plaintiff's
impairments impact her ability to work because she often fails to
understand work instructions, causing her to experience stress,
anxiety and paranoia (Tr. 193, 195).  Plaintiff also relies on
Dr. Miller's assessment that the combination of Plaintiff's
mental illness and low intellectual functioning results in
"severe deterioration when presented in any work situation" (Tr.
258).

Plaintiff overlooks other objective medical evidence,
however, which shows that despite borderline intellectual
functioning, Plaintiff had logical and coherent thought
processes; had good memory; had good concentration; and had good
emotional insight (Tr. 261).  Moreover, as the ALJ noted,
Plaintiff's borderline intellectual functioning did not prevent
her from working in the past (Tr. 16, 143-44, 155, 163).[6]  In
fact, Plaintiff's past work as a cashier/sales clerk was

---

[6]    As the Commissioner points out, although Plaintiff asserts
that her work history shows that she could not maintain
employment (Pl.'s Br. at 14), the record actually shows that
she worked for some employers for extended periods (Tr. 143-
44, 155).  Notably, the record shows that Plaintiff
maintained employment at the same restaurant from 1990
through 1994 and at the same grocery store from 1996 through
1997 (Tr. 143-44, 155).

semi-skilled work, which demonstrates that she could do even more than the basic mental work activities (Tr. 16, 62).  Further, Plaintiff's borderline intellectual functioning did not prevent her from graduating from high school or from performing a wide range of activities, including cleaning her house, shopping, preparing meals, handling her own bills, and visiting with family and friends (Tr. 171-72).  In light of all of the evidence, it appears that the ALJ utilized the proper standard and reasonably concluded that Plaintiff's borderline intellectual functioning was not a severe impairment as defined by the regulations.

We note that even though the ALJ properly found that Plaintiff's borderline intellectual functioning was not a severe impairment, he nevertheless accommodated any possible limitations caused by the impairment in his RFC assessment.  Specifically, the ALJ limited Plaintiff to work which was simple, routine, repetitive, and low-stress and involved little interaction with the public and supervisors (Tr. 23, Finding No. 5, 7).  Plaintiff has not established any additional mental limitations caused by borderline intellectual functioning or any other impairment. Therefore, regardless of whether or not Plaintiff's borderline intellectual functioning was a severe impairment, the ALJ properly accommodated all of Plaintiff's mental functional limitations.  Accordingly, the district court should reject Plaintiff's assertion that the Commissioner's decision should be

remanded because the ALJ found that Plaintiff's borderline intellectual functioning was not severe.

Next, Plaintiff argues that the ALJ failed to properly consider relevant and uncontroverted medical evidence, specifically the reports and opinions of Drs. DeTore and Miller, including Plaintiff's GAF scores.

As concerns her GAF scores, we begin our discussion by noting that a GAF is a subjective, not objective, determination that represents the clinician's judgment of the individual's overall level of functioning for the purpose of planning treatment, measuring the treatment's impact, and predicting outcome. DSM-IV-TR, at 32. GAF scores are not entitled to significant weight unless they are supported by the objective medical evidence and consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In the instant case, the ALJ determined that the GAF scores assigned by Dr. Miller and Ms. Scutella[7] were not entitled to significant weight because they were unsupported by the objective medical evidence and inconsistent with the record as a whole (Tr. 20-21). As previously discussed, Ms. Scutella opined that Plaintiff had a GAF of 35, even though she found that

---

[7]   As the Commissioner points out, there is no evidence showing that Ms. Scutella is a licensed psychologist. Therefore, she is not an acceptable medical source under the regulations. See 20 C.F.R. §§ 404.1513, 416.913 (providing a list of acceptable medical sources). Accordingly, Ms. Scutella's opinion is only entitled to the weight of a lay person.

14

Plaintiff had only moderate symptoms (Tr. 243, 245). Similarly, Dr. Miller opined that Plaintiff had a GAF of 45 even though she found that Plaintiff's depression was "mostly gone," and that she had no psychomotor agitation or psychomotor retardation; had good interpersonal relational style; had normal speech rate and rhythm; had logical and coherent thought processes; had good memory and concentration; and had good emotional insight (Tr. 261). As well, it would appear that Plaintiff's wide range of activities are inconsistent with a GAF in the 35-50 range (Tr. 171-72). Additionally, the evidence shows that Plaintiff's condition improved with treatment (Tr. 235-36, 241). In our view, the ALJ properly elected not to give significant weight to the GAF scores assigned to Plaintiff.

As concerns the attention and weight given to the treating physicians' reports and opinions, it appears that the ALJ gave significant weight to Dr. DeTore's opinion regarding Plaintiff's functional limitations (Tr. 19). Specifically, the ALJ noted that Dr. DeTore opined that Plaintiff had a fair ability to perform most work-related activities, but had deficiencies in the ability to interact with supervisors, deal with stress, and to understand, remember, and carry out detailed or complex instructions (Tr. 19, 197-98). Because the ALJ found that Dr. DeTore's opinion was supported by the evidence and consistent with the record as a whole, he accommodated the limitations identified by Dr. DeTore by finding that Plaintiff

15

could perform only simple, routine, repetitive, low stress work activity that involved little interaction with the public or supervisors (Tr. 19).

It would appear that the ALJ also considered Dr. Miller's opinion regarding Plaintiff's ability to work, but properly found that it was not entitled to significant weight (Tr. 20). Generally, the Commissioner will give enhanced weight to the findings and opinions of treating physicians. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, the Commissioner is not bound by a treating physician's opinion on the issue of the nature and severity of the claimant's impairment and may reject the opinion if: (1) there is a lack of supporting medically acceptable clinical and laboratory diagnostic techniques; or (2) the opinion is inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Moreover, the Commissioner is not required to give any special significance to the source of an opinion on issues reserved to the Commissioner, including opinions that a claimant is disabled. See 20 C.F.R. §§ 404.1527(e), 416.927(e).

Here the ALJ noted that Dr. Miller's opinion that Plaintiff was unable to work was undercut by the doctor's own objective findings (Tr. 20). Dr. Miller reported that Plaintiff's depression was "mostly gone" since starting with Celexa (Tr. 260). Dr. Miller also found that Plaintiff had no psychomotor agitation or psychomotor retardation; had good

16

interpersonal relational style; had normal rate and rhythm of speech; had logical and coherent thought processes; had good memory; had good concentration; and had good emotional insight (Tr. 261).

As well, Dr. Miller's objective findings were similar to those of Dr. DeTore, who reported that Plaintiff was oriented in all three spheres; had an intact memory; and had no problems with impulse control (Tr. 195). Also, progress notes from Family Services of Western Pennsylvania showed that Plaintiff was "doing well" and had been "on an even keel" since starting medication (Tr. 235-36, 241). It appears, then, that the ALJ properly found that while the objective medical evidence demonstrated that Plaintiff had some mental limitations, the evidence did not support Dr. Miller's opinion that these limitations prevented Plaintiff from working.

The ALJ further noted that Dr. Miller's opinion was inconsistent with other evidence of record (Tr. 20). Plaintiff admitted that she took care of her personal needs, dusted, made the bed, washed dishes, did laundry, vacuumed, did her own shopping, prepared meals, handled her own bills, and visited with family and friends (Tr. 171-72, 194, 219, 220, 260).[8]   Further,

---

[8]   Plaintiff asserts that her own description of her daily activities in the daily activities report should not be given any weight because she finds it illegible and because it is inconsistent with her testimony at the second hearing (Pl.'s Br. at 14). However, even if Plaintiff cannot read her remarks in the activities report, her statements in the report are consistent with statements she made to Ms.

Dr. Glover, the state agency psychologist, concluded that Plaintiff had the psychological capacity "to carry out routine work assignments in a stable work setting" (Tr. 201).  See 20 C.F.R. §§ 404.927(f)(2)(I); 416.927(f)(2)(I) (providing that because state agency medical consultants are "highly qualified" psychologists, who are "experts" in Social Security disability evaluations, their opinions with regard to the severity of a claimant's condition are entitled to significant weight).  In addition, as noted above, Dr. DeTore opined that Plaintiff had a fair ability to perform most work-related mental tasks (Tr. 197-98).  In light of the aforementioned, there is substantial evidence to support the ALJ's finding that Dr. Miller's opinion was inconsistent with the record as a whole.

Plaintiff's final argument is that the ALJ's decision is not supportable since it is predicated upon a defective hypothetical given to the VE.  Specifically, Plaintiff argues that the hypothetical contained limitations that understated the severity of Plaintiff's impairments, were inconsistent with the medical evidence and generally described an individual with the

---

Scutella, Dr. DeTore, and Dr. Miller regarding her daily activities (Tr. 171-72, 194, 219, 220, 260).  Plaintiff's description of her daily activities in the report was also consistent with her testimony from the first hearing, at which she stated that she cleaned the house, watched television, visited her aunt and uncle, and went out with her husband a "couple of times a week" (Tr. 90). Accordingly, the ALJ properly gave Plaintiff's description of her activities set forth in her daily activities report significant weight (Tr. 18, 171-72).

23

ability to handle a low stress environment and some degree of interaction with supervisors and the public, which Plaintiff's physicians opined she cannot handle.

The responsibility for deciding a claimant's RFC, or what a claimant can do despite her limitations, rests with the ALJ and is based on consideration of all of the evidence of record.  20 C.F.R. §§ 404.1546, 416.946.  In this case, ALJ found that Plaintiff retained the functional capacity to perform medium work which was simple, repetitive, routine, and low stress and which involved little interaction with the public and supervisors and no excessive climbing (Tr. 23, Finding Nos. 5, 7).  This RFC assessment appears to be consistent with the findings of Dr. DeTore, who found that Plaintiff had a fair ability to perform most work-related functions, but had a poor ability to interact with supervisors, deal with stress, and to understand, remember, and carry out detailed or complex instructions (Tr. 19, 197-98). The ALJ's RFC assessment also appears to be consistent with Dr. Glover's assessment that Plaintiff had moderate mental limitations, but nevertheless had the psychological capacity "to carry out routine work assignments in a stable work setting" (Tr. 201).

The ALJ included all of above-noted limitations in his hypothetical question to the VE (Tr. 64-65).  Even with these limitations, the VE testified that an individual of Plaintiff's age, education, and work experience would be able to perform work

24

as a hand packer, janitor/cleaner, dishwasher, vehicle washer, laundry folder, office cleaner, and silverware wrapper, all of which existed in significant numbers in the national economy (Tr. 65).

Plaintiff asserts that the ALJ's hypothetical question was defective because it failed to include the limitation that Plaintiff "would be unable to stay on task and function independently due to impaired concentration for at least 85 percent of the workday" (Pl.'s Br. at 17).  The basis for this limitation is not clear.  In fact, the objective medical evidence shows that Plaintiff actually had "good concentration" (Tr. 261).

Because it appears that the ALJ's hypothetical question to the VE fairly set forth all of Plaintiff's limitations that were supported by the record, the VE's testimony regarding the existence of jobs that Plaintiff could perform constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in

dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 16 September, 2005.

cc:  William J. Remaley, Esquire
     Berger & Green
     5850 Ellsworth Avenue
     Suite 200
     Pittsburgh, PA 15232

     Rebecca Ross Haywood
     Assistant United States Attorney
     United States Attorney's Office
     700 Grant Street
     Suite 400
     Pittsburgh, PA 15219